UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DYLAN DEWITT BANKS, | ) | |
| | ) | |
| Plaintiff, pro se, | ) | |
| | ) | |
| v. | ) | 1:04CV199 |
| | ) | |
| B.J. BARNES, CHUCK WILLISON, | ) | |
| H. JACKSON, DR. HASSAN, and | ) | |
| MIKE WALLS, | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on a motion to dismiss by Defendants Hassan and Walls (docket no. 29). Plaintiff's right to respond letter was entered on January 11, 2005. More than twenty days have elapsed and Plaintiff has not yet responded. The matter is ripe for disposition. Furthermore, because the parties have not consented to the jurisdiction of the magistrate judge, the motion must be dealt with by way of recommendation.

### I. Background and Plaintiff's Allegations

Plaintiff filed this *pro se* 42 U.S.C. § 1983 complaint against Defendants B.J. Barnes, Chuck Willison, H. Jackson, Dr. Hassan, and Mike Walls. Compl. (docket no. 2). Plaintiff's complaint is dated February 17, 2004, and it was file-stamped on March 5, 2004. As for the two Defendants who filed this particular motion, Plaintiff identifies Dr. Hassan as a facility Physician with Prison Health Services, Inc.,

employed at the Guilford County Detention Center (GCDC), and Mike Walls as Director of Prison Health Services, Inc., employed at Prison Health Services, Inc. Plaintiff's statement of claim mentions Dr. Hassan, but not Mike Walls.

Although it is not stated clearly, it appears that Plaintiff's § 1983 action is based on Defendants' alleged deliberate indifference to his serious medical needs in violation of his Eighth Amendment right against cruel and unusual punishment. According to Plaintiff's allegations, Plaintiff was examined by Dr. Hassan for the first time on March 21, 2001, nearly a month after being admitted to the GCDC. Plaintiff seems to contend that during the month before he was able to see Dr. Hassan, as well as the months in which Plaintiff was under Dr. Hassan's care before being transferred from the GCDC, the prison staff, medical staff, and Dr. Hassan himself were all deliberately indifferent to his medical condition. Plaintiff discusses at great length the medical condition from which he was suffering and the measures which he took trying to receive proper treatment.

Plaintiff was taken to the GCDC on February 18, 2001. Plaintiff states that:

> I told the nurse on duty during intake . . . that I had a serious medical condition, ulcerative colitis, that required daily medication and a special diet. She asked me if I had someone that could bring the medication. I told her no [sic] because I was out and needed to get my prescriptions renewed by my G.I. doctor. During approximately the first four weeks I was in custody at the facility, I didn't receive any medication or a special diet, in which time I was getting progressively worse.

Compl. p. 6. Plaintiff continues, in his complaint, to describe the efforts of his family

"to obtain medication and treatment for my disease," and the promise from his attorney to "have something done about the situation." *Id.* Pp. 6-7. He describes numerous visits to the nurse, internal bleeding, receiving doses of Tylenol and prednisone that were irregular and not helpful, blood pressure problems, problems getting the special diet he needed, days without any medication at all, weight loss, and difficulty getting an appointment with Dr. Hassan. Plaintiff seeks $100,000 in relief for "physical injury and pain and suffering" as well as payment of future medical expenses, and injunctive relief regarding the protocols and procedures for dealing with medical problems and hospital visits.

## II. Motion to Dismiss Standard

The purpose of a motion to dismiss, under FED. R. CIV. P. 12(b)(6), is to test the sufficiency of the complaint, not to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). At this stage of the litigation, the court must accept the well-pleaded allegations in the complaint as true and draw all reasonable factual inferences from those facts in the plaintiff's favor. *Id.* at 244. Dismissal under Rule 12(b)(6) is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see Wolman v. Tose*, 467 F.2d 29, 33 n.5 (4th Cir. 1972) ("A complaint should survive a motion to dismiss if it sets out facts sufficient for the court to *infer* that all the required elements of the cause of action are present."). Stated differently, the issue is not whether the plaintiff is likely

3

to prevail on his claim, but whether he is entitled to offer evidence to support the claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984); *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989); *Adams v. Bain*, 697 F.2d 1213, 1216 (4th Cir. 1982). A plaintiff need not plead detailed evidentiary facts, and a complaint is sufficient if it will give a defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Bolding v. Holshouser*, 575 F.2d 461, 464 (4th Cir. 1978).

Furthermore, the language in a handwritten *pro se* document is to be even more liberally construed than language in a professionally drafted complaint. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). "However inartfully pleaded," a *pro se* complaint must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* Nonetheless, the requirement of liberal construction does not mean that the court can simply "conjure up" facts or issues to support an otherwise baseless complaint. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). With these standards in mind, the court will now examine whether Plaintiff's case should be dismissed for failure to state a claim or because of other jurisdictional defects.

**III. Discussion**

    **A. Jurisdiction**

The court first notes that Defendants Hassan and Walls have moved to dismiss the action against them under FED. R. CIV. P. 12(b)(5) because they were not served within 120 days of the filing of Plaintiff's complaint in accordance with FED. R. CIV. P. 4(m).[1] Here, the complaint was dated February 17, 2004, and was file-stamped in this court on March 5, 2004. On the day that the complaint was file-stamped in this court, however, the court issued an order stating, among other things, that Plaintiff's service requirement would be stayed until Plaintiff submitted to the court certain documents related to his *in forma pauperis* application. Order (docket no. 3). On July 26, 2004, the stay was lifted by a court order directing that summonses be served on Defendants. Order (docket no. 7). Service of summons was made on Defendants on September 24, 2004, which was within 120 days of the July 26 order. Thus, Plaintiff complied with the 120-day requirement for service on Defendants, and Defendants' Rule 12(b)(5) motion should, therefore, be denied.

Defendants Hassan and Walls also argue that dismissal is proper because neither was properly served in accordance with FED. R. CIV. P. 4(m). First, Defendants note that "the Complaint and Summons were mailed to the Guilford

---

[1] Rule 4(m) of the Federal Rules of Civil Procedure provides, in pertinent part:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).

County Detention Center" instead of being personally delivered to Hassan or Walls, to their agent, or left at their respective homes. Br. Supp. Mot. Dism., pp. 5-6. As such, Defendants argue that service was insufficient under FED. R. CIV. P. 4(e). While it is true that service to Defendant Hassan's workplace did not comply with Rule 4(e), the court will not dismiss Plaintiff's complaint on this basis, given the unique circumstances of this *pro se* case.

Here, Plaintiff is proceeding in forma pauperis; thus, service in this case was made by the U.S. Marshal. 28 U.S.C. § 1915(d) ( "The officers of the court shall issue and serve all process, and perform all duties in such cases."). Numerous circuits have held that good cause exists to excuse a plaintiff's failure to serve where the plaintiff is proceeding in forma pauperis and is therefore entitled to rely on service by the U.S. Marshal. *See Moore v. Jackson*, 123 F.3d 1082, 1085-86 (8th Cir. 1997); *Byrd v. Stone*, 94 F.3d 217, 219-20 (6th Cir. 1996); *Dumaguin v. Sec'y of Health & Human Servs.*, 28 F.3d 1218, 1221 (D.C. Cir. 1994); *Sellers v. United States*, 902 F.2d 598, 602 (7th Cir. 1990); *Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2nd Cir. 1986). As one court has noted,

> FED. R. CIV. P. 4(c)(2) dovetails with § 1915(c) by providing that the court must appoint a United States Marshal to serve plaintiff's process "when the plaintiff is authorized to proceed in forma pauperis pursuant to 28 U.S.C. § 1915." Together, Rule 4(c)(2) and 28 U.S.C. § 1915(c) stand for the proposition that when a plaintiff is proceeding in forma pauperis the court is obligated to issue plaintiff's process to a United States Marshal who must in turn effectuate service upon the defendants, thereby relieving a plaintiff of the burden to serve process once reasonable steps have been taken to identify for the court the defendants named in the complaint.

6

*Byrd*, 94 F.3d at 219; *see also Puett v. Blandford*, 895 F.2d 630, 635 (9th Cir. 1989) (stating that "an incarcerated pro se plaintiff proceeding in forma pauperis . . . should not be penalized by having his or her action dismissed for failure to effect service where the U.S. Marshal or the court clerk has failed to perform the[ir respective] duties"). Here, Plaintiff's complaint clearly indicated that Defendants Walls and Hassan were being sued in their individual capacities and identified the location of the office where he believed them to be working at all times relevant to the complaint. In accordance with § 1915(c) and Rule 4(c)(2), the court forwarded Plaintiff's paperwork to the Marshals Service for service of process, and the Marshal notified Plaintiff that process had been served. As other courts have done, this court should excuse Plaintiff's failure in this case to effectuate service on Defendants personally and deny the motion to dismiss based on insufficiency of service of process.

**B. Statute of Limitations for a § 1983 Claim**

The court next addresses Defendants' contention that Plaintiff's deliberate indifference claim is barred by the applicable statute of limitations. Defendants argue that Plaintiff's claim for deliberate indifference accrued when he entered the GCDC on February 18, 2001, and the applicable three-year statute of limitations ran three years later. Defendants argue that since Plaintiff did not file his complaint until March 5, 2004, his claim for deliberate indifference is barred by the statute of limitations. For the following reasons, the court disagrees.

7

There is no specific statute of limitations provided in 42 U.S.C. § 1983 for claims brought under it; instead, federal courts apply the forum state's "most analogous" statute of limitations. *See Owens v. Okure*, 488 U.S. 235 (1989) (residual or general personal injury statute of limitations of the forum state should be considered for § 1983 claims where a state has one or more statutes of limitations for certain enumerated intentional torts, and a residual statute for all other personal injury actions); *Wilson v. Garcia*, 471 U.S. 261, 276 (1985) (holding that courts entertaining claims brought under 42 U.S.C. § 1983 should borrow the state statute of limitations for personal injury actions). The state limitations period governing a claim for damages for personal injuries applies to a § 1983 action, regardless of the allegations in the complaint, and the three-year statute of limitations set forth in N.C. GEN. STAT. § 1-52(5) controls. *See Brooks v. City of Winston-Salem*, 85 F.3d 178 (4th Cir. 1996) (citing *Wilson*, 471 U.S. 261); *National Advertising Co. v. City of Raleigh*, 947 F.2d 1158, 1161-62 & n.2 (4th Cir. 1991).

Although state law determines the applicable time limit for statutes of limitations, federal law determines when a claim accrues. *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975) (stating that although "[t]he time limitation for civil rights actions, such as those under § 1983, is borrowed from state law . . . [t]he time of accrual of a civil rights action is a question of federal law."). Federal law provides that a claim accrues when the plaintiff "knows or has reason to know of the injury which is the basis of the action." *See Cox*, 529 F.2d at 50. In general, a plaintiff has reason to

8

know of such an injury when he can answer "two questions: Am I injured? Who injured me? At that point, the plaintiff has enough information to begin investigating his claims." *United States v. Kubrick*, 444 U.S. 111, 122 (1979).

Here, Plaintiff was arrested and entered the GCDC on February 18, 2001. Plaintiff's complaint was file-stamped on March 5, 2004, but it was dated February 17, 2004. Defendants contend that Plaintiff's claim accrued on the first day that he entered the GCDC–February 18, 2001, and the complaint was filed on March 5, 2004, more than three years later. It appears, however, that, as an inmate proceeding pro se, Petitioner is entitled to the benefit of the prison mailbox rule, which provides that a complaint is deemed to be filed when it is handed over to prison officials for mailing. *See Lewis v. Richmond City Police Dep't*, 947 F.2d 733 (4th Cir. 1991) (applying the prison mailbox rule in a section 1983 action). Plaintiff has not presented an affidavit indicating when he handed over his complaint to prison officials for mailing, but the court can assume that he did so on or before February 20 because the docket report indicates that the court received the complaint on February 23. Thus, it appears that for purposes of the statute of limitations, Plaintiff filed his complaint within three years of his first date of incarceration at the GCDC, which is the first possible date when his claim for deliberate indifference could have accrued. It would be unreasonable, in any event, to find that Plaintiff's claim accrued on the first date of his incarceration because Plaintiff's allegations indicate that, although he knew about his condition when

9

entered the GCDC, it was only over time as Defendants allegedly refused to treat it properly that it became worse due to their deliberate indifference. Thus, Plaintiff's allegations of deliberate indifference are in the nature of a continuing violation, which means that acts or omissions by Defendants occurring between February 18, 2001, and March 5, 2004, (assuming that March 5 was the filing date) are not deemed to be outside of the statute of limitations. *See Heard v. Sheahan, et al.,* 253 F.3d 316, 318 (7th Cir. 2001) (discussing the continuing violation doctrine). In sum, Plaintiff's claim is not barred by the statute of limitations, and the court should not grant Defendants' motion to dismiss on this ground.

**C. The Merits of Plaintiff's § 1983 Claim Alleging Deliberate Indifference to a Serious Medical Need**

The court next addresses Defendants' contention that Plaintiff's complaint fails to sufficiently allege that Defendants were deliberately indifferent to his serious medical needs in violation of his Eight Amendment right against cruel and unusual punishment. Not "every claim by a prisoner that he has not received adequate medical treatment states a [constitutional] violation." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). The Eighth Amendment only proscribes acts or omissions by prison officials that are "sufficiently harmful to evidence *deliberate indifference* to serious medical needs." *Id.* at 105 (emphasis added). Following *Estelle*, courts have developed a two-part test for evaluating § 1983 claims alleging Eighth Amendment violations as to medical care: Courts first evaluate whether there was evidence of a

serious medical need; if so, courts then consider whether defendant's response to that need amounted to deliberate indifference. *Mandel v. Doe*, 888 F.2d 783, 787-88 (11th Cir. 1989).

The deliberate indifference standard requires the plaintiff to prove that "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference is not an objective standard, along the lines of "civil-law recklessness," but rather a subjective standard, akin to criminal law recklessness, focusing on the defendant's conscious disregard of a substantial risk of harm. *Farmer*, 511 U.S. at 836-37. In other words, to be deliberately indifferent, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Although "deliberate indifference" is a subjective standard, a prison official's knowledge "is a question of fact, subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* at 842. For example, a factfinder may infer "that a prison official knew of a substantial risk *from the very fact that the risk was obvious*." *Id.* (emphasis added).

Mere negligence or medical malpractice is not sufficient to establish deliberate indifference. *See West v. Atkins*, 487 U.S. 42, 48 n.8 (1988); *Estelle*, 429 U.S. at 105-06. An "error of judgment" on the part of prison medical staff, or "inadvertent failure to provide adequate medical care, while perhaps sufficient to support an action for malpractice, will not constitute a constitutional deprivation redressable

under § 1983." *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979). As such, mere disagreements between a health care provider and an inmate over the proper course of treatment do not state a viable Eighth Amendment claim. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) ("Questions of medical judgment are not subject to judicial review."). Rather, to establish deliberate indifference, the plaintiff must show that treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851-52 (4th Cir. 1990). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement [or] supplying medical needs." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

The court first finds that Plaintiff sufficiently alleges that he suffered from a serious medical condition while at the GCDC. Without his medication and the requisite diet during his stay at the GCDC, Plaintiff began suffering a great deal of pain, bleeding internally, and losing weight. The remaining issue is whether Plaintiff sufficiently alleges deliberate indifference to his medical condition by Defendants. For the following reasons, Plaintiff's complaint sufficiently states a claim against Defendant Hassan, but does not sufficiently state a claim against Defendant Walls.

According to Plaintiff's description of Defendant Walls' position, Plaintiff understood him to be the director of Prison Health Services Inc. during Plaintiff's

12

incarceration at the GCDC. Although Plaintiff describes his attempts to be seen by and receive treatment from Defendant Hassan, Plaintiff alleges nothing against Defendant Walls. Defendant Walls' position as director of Prison Health Services cannot, by itself, subject him to claims of deliberate indifference to a prisoner's medical needs. *See Farmer,* 511 U.S. 825, 836-37 (1994) (stating that the deliberate indifference standard requires a plaintiff to prove that "the official knows of and consciously disregards an excessive risk to inmate health or safety"). Plaintiff has not alleged that Defendant Walls knew anything at all about Plaintiff's condition. Therefore, a claim against Defendant Walls for deliberate indifference to Plaintiff's medical needs cannot stand, and Plaintiff's claim should be dismissed as to Defendant Walls.

As to Plaintiff's allegations against Defendant Hassan, Defendant Hassan argues that Plaintiff's allegations merely show negligence or malpractice on the part of prison medical staff, if anything at all. Viewed liberally and drawing all reasonable inferences from the facts in his favor, the court finds that Plaintiff has sufficiently alleged that the GCDC staff, and particularly Defendant Hassan, deliberately disregarded Plaintiff's specific medical needs. Plaintiff alleges that at the time of his admission to the GCDC, he was suffering from a serious illness which required the regular dosage of a specific medication, Zantac. Prison staff instead gave him Tylenol, prednisone, and Tagamet. Plaintiff alleges that he tried numerous times to inform prison staff of his specific medical needs, yet was unable to see a doctor until

13

March 21, 2002.

Plaintiff's complaint leaves many factual questions unanswered. His allegations allow for two opposing inferences. First, the court could very well infer that the decision to substitute Tylenol, prednisone, and Tagamet was based on what was thought to be medically appropriate for Plaintiff (even if the doses were given irregularly or inconsistently), or that the decision was at least grounded in a medical basis, even if it was unwise. Indeed one generally tends to presume that medical personnel make decisions based on medical judgment. Drawing this inference, however, would amount to drawing an inference *against* Plaintiff, in contravention of the motion to dismiss standard. *Edwards*, 178 F.3d at 244. The facts alleged allow a second contrary inference, namely that the medical staff disregarded the medical and medicinal needs of Plaintiff, ignoring an obvious risk of not treating a severe GI problem. Based solely on the allegations in the complaint, (and not based on what the court or the defendant *suspects* to be the case), the decision to give Plaintiff the medications he did receive was based solely upon what was available, in deliberate disregard for Plaintiff's medical needs.

The question of whether Plaintiff's complaint allows for an inference of deliberate indifference is admittedly very close. In the end, given the doubly liberal standard for evaluating the sufficiency of *pro se* complaint, coupled with the fact-specific inquiry required to fairly resolve a deliberate indifference claim, this court must resolve any doubt in Plaintiff's favor. *Haines*, 404 U.S. at 520-21 (stating that

14

complaint can only be dismissed for failure to state a claim if it appears "*beyond doubt* that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (emphasis added). Furthermore, the court finds this result to be compatible with examples in case law. *See, e.g., Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir. 1974) (dismissal not warranted where plaintiff alleged that he brought to attention of nurse his allergy to penicillin, but was nonetheless given shot with bad results)(cited with approval by *Estelle*, 429 U.S. at 106, n.14); *Williams v. Vincent*, 508 F.2d 541, 544 & 555 (2nd Cir. 1974) (choice of less efficacious treatment than that requested by plaintiff-prisoner may amount to deliberate indifference, thus not warranting dismissal of complaint) (cited with approval by *Estelle*, 429 U.S. at 106, n.14); *see also Loe v. Armistead*, 582 F.2d 1291, 1296 (4th Cir. 1978) (finding that, even though the *pro se* complaint provided only a "sketchy description" of the treatment for a broken arm that he received in prison infirmary, and offered no explanation for an eleven hour delay in examination by the doctor, and left many other questions unanswered as to what actually occurred in treating the medical condition, dismissal of complaint by district court was improper); *Id.* at 1297 (Hall, J., dissenting) (outlining extensive treatment that was admittedly received by prisoner, despite which the majority nonetheless found allegations sufficiently stated claim for deliberate indifference). In sum, this court finds that dismissal for failure to state a claim against Defendant Hassan is not warranted at this stage of Plaintiff's case, and the motion to dismiss should therefore be denied as to Defendant Hassan.

### D. Plaintiff's Request for Injunctive Relief

Finally, Plaintiff's complaint seeks, as injunctive relief, the establishment and implementation of unspecified "protocols and procedures for dealing with certain, specific medical conditions, diseases, and disorders," as well as "specific guidelines for prisoner emergency hospital visits and transfers to medical safekeeping facilities." Compl., p. 5. Significantly, however, Plaintiff is no longer a prisoner at the GCDC, and therefore no longer affected by its policies and procedures. When a prisoner has been transferred or released, and is no longer subject to the policies and procedures of a particular facility, then a request for injunctive relief in the form of policy or procedural reform against that particular facility is moot. *See Weinstein v. Bradford*, 423 U.S. 147 (1975) (because there is no likelihood that Plaintiff would come before a particular parole board again, his claims for injunctive relief in the form of procedural reform was moot); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986) (a prisoner transfer mooted a request for declaratory and injunctive relief, but not a request for money damages); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) ("Because the prisoner has been transferred, his request for injunctive relief is moot."). When Plaintiff filed the complaint, he was being housed at Central Prison in Raleigh, North Carolina. Therefore, his claims for injunctive relief against the GCDC are moot, and the court should dismiss Plaintiff's claim seeking injunctive relief.

**CONCLUSION**

For the reasons stated herein, it is therefore **RECOMMENDED** that the court **GRANT** the motion to dismiss as to Defendant Walls and **DENY** the motion to dismiss as to Defendant Hassan. It is further **RECOMMENDED** that the court dismiss Plaintiff's claim for injunctive relief as moot.

_____
Wallace W. Dixon
United States Magistrate Judge

June 8, 2005